UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

    KIMONIQUE BROUSTER,                      Case No.: 06-58307
                                                          Chapter 13
                        Debtor.                              Hon. Walter Shapero
_____/

**<u>OPINION IN CONNECTION WITH DEBTOR'S
ATTORNEY'S APPLICATION FOR FEES</u>**

Before the Court is Debtor's Attorney Fee Application seeking fees in the amount of $3,528.00, to which the Debtor has objected. An evidentiary hearing was held and the relevant facts follow.

This chapter 13 bankruptcy case was filed on December 10, 2006. The plan was filed on December 26, 2006, and called for payment of $431.82 in bi-weekly payments to the Trustee. A Payment Order was entered on December 26, 2006, calling for bi-weekly deductions of the $431.82. Under the statute the first plan payment was due within 30 days of the filing or by January 10, 2007. The Payment Order was served on the employer (Blue Cross Blue Shield) by the Trustee, but not until January 10, 2007. Debtor was paid bi-weekly. Her payroll periods relevant to this matter were those two week periods ending January 12, 2007; January 26, 2007; February 9, 2007; February 23, 2007; and March 8, 2007. Debtor's employer normally issues its payroll checks to the employees (noting on payroll advices any deductions such as those pursuant to a Bankruptcy Court Payment Order), one week after the end of the payroll period. As noted, the first plan payment of $431.82 to the Trustee was due before January 10, 2007. Since the Payment Order was served on that date, Debtor's pay stub for the period ending January 12, 2007, would clearly not have reflected any

1

deduction pursuant to that order. However, Debtor did not make a direct payment to the Trustee of that amount.

Given the bi-weekly plan payment obligation, the next payment due to the Trustee would presumably have been due two weeks from the first payment outside due date of January 10, 2007, or, on or about January 24, 2007. Debtor's pay for the period ending January 26, 2007, would have been paid her on or about February 2, 2007. Debtor's pay advice for the payroll period ending January 26, 2007, is not in evidence, so it is not clear whether or not the employer made the required pay order deduction in that payroll - though it should have, given the fact the Pay Order was served on it on January 10, 2007. It does appear that the bi-weekly payment due on or about January 24, 2007, was not paid, at least by the Debtor, which if true at that point would have left the Debtor with a two payment delinquency amounting to $863.64. The next bi-weekly plan payment would have been due two weeks from January 24, 2007, or by February 7, 2007. Debtor's pay advice for the two week pay period ending February 9, 2007 (which she received on or about February 15, 2007), shows a deduction for the $431.82 amount set forth on the Payment Order, as does the pay advice for the succeeding two week period ending February 23, 2007, which she received on or about March 1, 2007. Apparently pay advices thereafter indicated the same. The Trustee's records apparently reflect an initial receipt of funds from the employer on or about March 2, 2007. The Debtor filed a motion on March 14, 2007, to compel the employer to remit withheld funds, asserting that the amount withheld but not paid as of March 1, 2007, was $1,295.96 - which amounts to three payments. Supporting that assertion was an attached Exhibit B, which consisted of four pages. Two of those pages consisted of duplicate copies of the Debtor's payroll advice for the payroll period ending February 23, 2007, showing a $431.82 deduction; one page was a payroll advice for the pay period

2

ending February 9, 2007, also showing a $431.82 deduction. The fourth page was a copy of the December 26, 2006, Payment Order. Thus, those exhibits at least supported only the deduction of two payments for the indicated two payroll periods. The original confirmation hearing set for March 12, 2007, was adjourned by stipulation to April 2, 2007, likely because of plan confirmation issues but primarily because of the issue arising out of the anticipated filing of the indicated motion to compel. On April 2, 2007, pursuant to a filed certificate of no objection, an order was entered to generally compel the employer to remit withheld funds to the Trustee in a timely manner, but without specifying any particular unpaid amounts for any particular periods. That order also required the "City of Detroit"(should it not have correctly stated "Blue Cross Blue Shield," who was Debtor's employer?) to pay $500 in attorney fees to Debtor's attorney for the time and cost in filing the Motion to Compel. The docket does not reflect any change or alteration of that order. The April 2, 2007, confirmation hearing was adjourned to May 7, 2007, by stipulation in order to permit the indicated April 2, 2007, order to be served on the employer and presumably the money to be paid. The May 7th confirmation hearing was adjourned to June 18th, and thereafter to July 16th, when the case was dismissed.

On May 16, 2007, an Amended Payment Order calling for a bi-weekly payment of $600.51 was entered but there is no proof of service of same on the docket. An Amended Plan calling for that increased payment had been filed and served on March 27, 2007.

The primary thrust of the Debtor's objection relates to Applicant's time spent relative to the failure of the employer to turn over funds withheld and the Debtor's conclusion that either the time spent on that matter was inappropriate or excessive or that the case was dismissed largely because of the inappropriate way in which that matter was dealt with - all through no fault of her own. As

3

to that matter, some 3.1 hours were spent by Applicant more or less exclusively on that matter, involving total charges of some $503.50. Applicant argues that part of the problem was Debtor's failure to provide appropriate pay advices required by the Trustee, and that in effect led to having to file the Motion and associated actions. This Court concludes Debtor did timely supply Applicant with what was attached to the Motion and those were, or were exactly the same as, or tantamount to, pay advices for two of the three pay periods apparently covered by the Motion. This was ample to put the Applicant and the Trustee on sufficient notice to enable them to get to the bottom of and solve the problem, absent a kind of recalcitrance on the part of the employer that is not evident here. It would appear from the recited facts that Debtor should have been held accountable as of March 2007, for direct payment to the Trustee preceding the Payment Order becoming effective, of no more than two bi-weekly payments to the Trustee - and possibly only one if in fact the employer made a payroll deduction and for the pay period ending January 26, 2007. That the latter is the case is supported by the Motion to Compel and the amounts sought therein - though, as noted the pay advice for the indicated week was not attached to the motion, and is not otherwise in evidence (and it would not affect the result if it were). The amount sought in the Motion appears to have reflected a conclusion that such amount was deducted for that period. The record itself is not fully clear as to what amounts were eventually paid in total by the employer to the Trustee, what periods they covered and whether or not those amounts properly reflected all of the amounts withheld for that purpose or the payments due, other than the first one or two. What is clear is that except for the one or two delinquent payments, arising before the initial Payment Order was served and could take effect the Debtor was essentially blameless, and Applicant and the Trustee were properly and timely supplied with sufficient information to enable them to pursue and conclude the matter with the employer, quite possibly

4

without having to initiate a contested matter in order to do so. Coupled with the fact that there appears to be an existing order, intended to obligate the employer to reimburse Debtor's attorney in connection with that same matter (though such may not be indispensable to the outcome), it would be unreasonable to charge Debtor with the cost of all of the indicated services in respect to that item. The facts require that $400 should be subtracted from the fees applicant seeks - the Court concluding that charges over and above that, to wit: $103.50, would properly and more reasonably represent charges appropriate to dealing with the issue involved.

It is also apparent, however, from the docket and the facts that the indicated plan payment delinquencies were not the only problem in this case. Others related to the Debtor's income level, obligations that needed to be included in the plan, and her ability to fund an appropriate, confirmable, plan. Applicant's services were appropriate and reasonable as to the other issues and aspects of this case and accordingly the indicated deduction from the amount sought is the only appropriate one. Applicant shall submit an appropriate order and presentation is waived.

**Signed on August 30, 2007**

                                           **/s/ Walter Shapero**
                                      **Walter Shapero**
                                      **United States Bankruptcy Judge**